IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CARL WILLIAM DAVIS and SHANNON WALLER DAVIS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION 21-0303-WS-N ) |
| STATE FARM FIRE AND CASUALTY COMPANY, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**ORDER**

This matter comes before the Court on plaintiffs' Motion to Remand (doc. 17). The Motion has been briefed and is now ripe for disposition.

**I.      Background.**

Plaintiffs, Carl William Davis and Shannon Waller Davis, filed this breach of contract action arising out of an insurance coverage dispute in the Circuit Court of Mobile County, Alabama, on May 26, 2021. (Doc. 1-1, PageID.14.) Named defendants included State Farm Fire and Casualty Company and four individual defendants, identified as Alan Brown (a Claim Specialist at State Farm alleged to have "handled this claim"), Jason Haynes (a Team Manager at State Farm alleged to have "handled this claim"), Chris Baty (an independent adjuster at State Farm alleged to have "handled this claim"), and Niall Stewart (alleged to be "the designated appraiser for Defendant State Farm"). (*Id.*, PageID.16, ¶¶ 12, 14-17.)

The well-pleaded factual allegations of the Complaint indicate that State Farm issued a policy insuring plaintiffs' home in Mobile, Alabama. (*Id.*, PageID.14-15, ¶¶ 1-4.) According to plaintiffs, their home sustained damage in a windstorm and hailstorm on October 25, 2019, yet State Farm "den[ied] Plaintiffs a total replacement of the asbestos slate tile roof on their home, and only allow[ed] for a repair o[f] a small portion of their garage." (*Id.*, ¶¶ 6-7.) More specifically, the Complaint alleges that an independent adjuster inspected plaintiffs' home on January 31, 2020, "and prepared an estimate for repairs totaling $91,439.44. … State Farm

refused to accept his estimate." (*Id.*, PageID.18, ¶ 29.) Rather than adopting the independent adjuster's estimate, State Farm issued its own estimate in the amount of $4,862.20 "for damage to the guest house only on or about February 1, 2020." (*Id.*, ¶ 30.) The Complaint alleges that "[o]n July 22, 2020, Defendant Alan Brown, a State Farm Claims Adjuster, denied that there was any wind or hail damage to the asbestos roof." (*Id.*, PageID.19, ¶ 35.) Although State Farm initially acceded to plaintiffs' demand for appraisal and designated defendant Niall Stewart to perform same, "Stewart, a State Farm Claims Specialist, reneged and denied the appraisal on December 28, 2020." (*Id.*, PageID.20, ¶ 38.)

On the strength of these and other allegations, the Complaint purports to bring the following claims against defendants: (i) a breach of contract claim against State Farm (Count I), (ii) a claim for bad faith refusal to investigate and pay valid claims against State Farm (Count II), (iii) a claim for negligent misrepresentation and suppression against all defendants (Count III), (iv) a claim for negligent hiring / training / supervision / retention against State Farm (Count IV), and (v) a claim for appraisal (Count V). Count III is particularly significant for purposes of the pending Motion to Remand. In that Count, plaintiffs set forth the theory of their negligent misrepresentation / suppression claim as being that "State Farm and the individual Defendants[] represented to Plaintiffs that they would be covered for storm losses," that "Plaintiffs relied to their detriment upon said indication that they would be covered for storm losses," and that only "when the loss occurred, after it was too late, did Defendants inform Plaintiffs that they would not be paid enough to cover the damage to their Property." (Doc. 1-1, PageID.26, ¶¶ 67-69.) No other alleged misrepresentations or suppressed facts are identified in the Complaint as forming the factual predicate of Count III.

The Complaint does not recite a specific demand for money damages in a sum certain. That said, the *ad damnum* clause sets forth the following categories of monetary relief sought, to-wit: (i) "[a] judgment of compensatory, consequential, and general damages for the full amount of coverage as provided under the Policy;" (ii) "[a]n assessment of punitive damages, where allowed under the law, to punish and deter Defendants from this type of conduct in the future;" and (iii) "[a]n award for stress, emotional distress, and mental anguish." (*Id.*, PageID.29, ¶ 82.)

On July 9, 2021, State Farm filed a Notice of Removal (doc. 1) removing this action to this District Court pursuant to 28 U.S.C. §§ 1441 and 1446. State Farm maintained that federal subject matter jurisdiction was conferred here by the diversity provisions of 28 U.S.C. § 1332.

As to the diversity of citizenship requirement, the Notice of Removal reflected (and presented evidence) that only defendant Alan Brown was of non-diverse citizenship than plaintiffs, all being Alabama citizens, but argued that Brown had been fraudulently joined, rendering his citizenship immaterial for the § 1332 jurisdictional analysis. As to the amount in controversy, the Notice of Removal pointed to the Complaint's express allegations that State Farm had refused to pay plaintiffs' estimate for repairs totaling $91,439.44, and instead endorsed a much smaller estimate of $4,862.20, with the difference plainly exceeding the $75,000 jurisdictional threshold. The Notice of Removal further observed that plaintiffs' claims for punitive damages and mental anguish damages were additional grounds for finding the amount in controversy to be satisfied, even if compensatory damages were otherwise substantially below $75,000.

On August 9, 2021, plaintiffs filed a Motion to Remand (doc. 18) this action to Mobile County Circuit Court. In that Motion, plaintiffs took the position that removal was improper because defendant Brown was not fraudulently joined (such that diversity was lacking), the amount in controversy does not exceed $75,000 (defeating § 1332 jurisdiction), and removal was premature because defendant Brown has not been served with process. Defendants dispute all of these stated grounds for remand.

**II.     Analysis.**

    **A.     Governing Legal Standard.**

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction. *See, e.g., Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("the burden of establishing removal jurisdiction rests with the defendant seeking removal"); *City of Vestavia Hills v. General Fidelity Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."). This burden applies with equal force in the context of a motion to remand. *See Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) ("On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction."). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts resolved in favor of remanding the action to state court. *See, e.g., Scimone*, 720 F.3d at 882 ("we strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all

uncertainties as to removal jurisdiction are to be resolved in favor of remand") (citation and internal marks omitted).

Under § 1332, federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted). Both aspects of § 1332 jurisdiction are implicated by the Motion to Remand in this case.

### B.  Fraudulent Joinder / Complete Diversity.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Simply put, "[t]he citizenship of a resident defendant fraudulently joined should not be considered by a court for the purpose of determining diversity jurisdiction." *Broadway v. State Farm Mut. Auto. Ins. Co.*, 4 F. Supp.3d 1271, 1275 (M.D. Ala. 2014) (citation omitted). "In a removal case alleging fraudulent joinder, the removing party has the burden of proving that … there is no possibility the plaintiff can establish a cause of action against the resident defendant." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) (citation omitted); *see also Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) ("To establish fraudulent joinder, the removing party has the burden of proving by clear and convincing evidence that … there is no possibility the plaintiff can establish a cause of action against the resident defendant") (citation and internal marks omitted).

"The burden of establishing fraudulent joinder is a heavy one." *Pacheco de Perez*, 139 F.3d at 1380; *see also Stillwell*, 663 F.3d at 1332 (similar). "If there is even a possibility that a state court would find that the complaint states a cause of action against … the resident defendant[], the federal court must find that the joinder was proper and remand the case to the state court." *Stillwell*, 663 F.3d at 1333 (citations omitted); *see also Pacheco de Perez*, 139 F.3d at 1380 ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court."). Thus, the plaintiff "need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Stillwell*, 663 F.3d at 1333 (citation omitted); *see also Ullah v. BAC Home Loans Servicing LP*, 538 Fed.Appx. 844, 846 (11th Cir. Aug. 16, 2013) (adopting the "even a possibility" formulation and

explaining that "[t]he standard for evaluating whether the plaintiff can establish a cause of action against the resident defendant is very lenient").

The parties agree that defendant Alan Brown is non-diverse; indeed, there is no dispute that he is an Alabama citizen, just as plaintiffs are.[1]  Under ordinary circumstances, then, Brown's non-diverse citizenship would preclude removal on the basis of the § 1332 diversity statute and would necessitate the remand of this action to state court.  Here, however, State Farm asserts that Brown was fraudulently joined because there is no possibility that the Davises can state a valid cause of action against him.  The Court agrees.

The only specific allegations in the Complaint concerning Brown are that he works as a Claim Specialist for State Farm, that he "has handled this claim," and that he "denied there was any wind or hail damage to the asbestos roof" on July 22, 2020.  (Doc. 1-1, PageID.16, 19, ¶¶ 14, 35.)  Nonetheless, plaintiffs argue that the Complaint states a viable claim against Brown for negligent misrepresentation and suppression (Count III).  In support of this contention, plaintiffs assert that Brown was "part of the State Farm 'Team' that denied Plaintiffs[] claim," that such denial of a covered loss amounted to an actionable misrepresentation, and that Alabama courts have previously recognized similar claims against State Farm claims handlers and adjusters.  (Doc. 18, PageID.211-12.)

As defendants correctly point out, the problem with plaintiffs' reasoning is that it does not align with the actual nature of the misrepresentation claim they have pleaded in the Complaint.  Count III does not identify the claims denial as being a negligent misrepresentation animating that cause of action; to the contrary, Count III specifies that the misrepresentation in question occurred when defendants "represented to Plaintiffs that they would be covered for storm losses" and that plaintiffs relied on that misrepresentation to their detriment by paying

---

[1] The Complaint also identifies defendants Jason Haynes and Chris Baty as Alabama residents.  (Doc. 1-1, PageID.16, ¶¶ 15-16.)  On removal, however, defendants submit a declaration in which defendant Baty avers that, "[a]lthough the complaint refers to me as a resident of Alabama, I am a resident and citizen of Texas."  (Doc. 1-3, PageID.161, ¶ 9.)  Likewise, defendants submit a declaration in which defendant Haynes avers that, "[a]lthough the complaint refers to me as a resident of Alabama, I am a resident and citizen of Texas."  (Doc. 1-3, PageID.163, ¶ 9.)  Plaintiffs do not challenge this evidence; thus, there appears to be no dispute that defendants Haynes and Baty are indeed diverse from plaintiffs, and that the only non-diverse defendant is Brown.  Accordingly, the fraudulent joinder analysis will be confined to plaintiffs' claims against defendant Brown.

premiums and commissions prior to the loss.  (Doc. 1-1, PageID.26, ¶¶ 67-70.)  Nothing in the Complaint even alleges that Brown made, or had anything to do with, any such misrepresentation that plaintiffs would be covered for storm losses.  Again, plaintiffs' claim in Count III is that State Farm misled them on the front end by assuring them that storm losses would be covered, and thereby inducing plaintiffs to pay premiums and commissions for the Policy.  By contrast, as a Claims Specialist, Brown was limited to evaluating/adjusting plaintiffs' claim after the loss occurred.[2]  These factual allegations do not support any possibility that Brown was involved in misrepresentations about coverages in the Policy preceding the loss.  For this reason, the Court readily concludes that the Complaint, as pleaded, does not state even a colorable claim for negligent misrepresentation and suppression against defendant Alan Brown.  This determination necessarily means that Brown was fraudulently joined; therefore, his non-diverse status cannot and does not destroy diversity jurisdiction under 28 U.S.C. § 1332.[3]

### C. Amount in Controversy.

Plaintiffs' second ground for seeking remand of this action to Mobile County Circuit Court is that the amount-in-controversy threshold for § 1332 jurisdiction is not satisfied here.  As the removing party, State Farm bears the burden of showing by a preponderance of the evidence

---

[2]  In his Declaration, Brown expressly avers that he "was not involved in any way with the sale, issuance or renewal of the State Farm insurance policy which is referred to in the complaint."  (Doc. 1-3, PageID.158, ¶ 7.)  Plaintiffs offer neither evidence nor even factual allegations to the contrary.  Because the misrepresentation identified in Count III was one relating to sale, issuance or renewal of the Policy, rather than processing a claim for a loss under the Policy, there is no possibility that Brown can be liable on Count III.

[3]  One other point bears noting at this time.  In briefing the Motion to Remand, plaintiffs suggest that Brown might be liable on the appraisal cause of action in Count V.  Specifically, plaintiffs argue that defendant Stewart reneged on the appraisal, and that "it is widely known that that State Farm handles its claims through a 'Team' approach and the actions of one adjuster are transferred to the actions of any of the others on the 'Team.'  Alabama based defendant Brown is one of the 'Team' members."  (Doc. 18, PageID.216.)  None of these "Team" allegations appear anywhere in the Complaint.  Even if they did, plaintiffs identify no authority in which any court applying Alabama law has ever held one "Team" member individually liable for an appraisal claim based on a co-worker "Team" member's failure or refusal to perform a contractually required appraisal.  Nor have plaintiffs explained how the failure to provide an appraisal (which would appear to be, at most, a breach of the insurance contract between State Farm and the Davises) can give rise to individual liability for a State Farm employee who is not a party to that contract.  Simply put, Count V cannot rescue plaintiffs from a fraudulent joinder determination as to defendant Brown.

that the $75,000 amount-in-controversy requirement is satisfied. *See Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 913 (11th Cir. 2014) ("We have repeatedly held that the removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum."). That said, a removing defendant is "not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). Rather, State Farm may meet its burden by showing either that it is "facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum," or that there is "additional evidence demonstrating that removal is proper." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citations omitted).

      State Farm has met its burden as to the amount in controversy. Specifically, State Farm points to factual allegations in the Complaint that the Policy provided more than $190,000 of insurance coverage to the Davis' home, that an independent adjuster prepared an estimate for repairs to the home totaling $91,439.44, that State Farm rejected that estimate, and that State Farm issued an estimate totaling just $4,862.20. These facts alleged in plaintiffs' own Complaint strongly suggest that they are seeking more than $86,000 in unpaid insurance benefits for the loss. Nowhere in the Complaint do plaintiffs provide any other dollar amounts, purport to limit their claims to an amount less than $75,000, or disclaim the independent adjuster's estimate as a benchmark for their contractual damages sought. Moreover, State Farm correctly notes that plaintiffs are asserting claims for punitive damages and compensatory damages for stress, emotional distress and mental anguish, all of which are properly factored into the amount-in-controversy calculus. On this basis, the Court is satisfied that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

      In an attempt to show otherwise, plaintiffs repeatedly state their intention to seek leave to file an amended complaint that will limit their damages claims to a sum certain below $75,000.[4]

---

[4] In support of this assertion, plaintiffs present evidence that they paid $45,200 for a new roof in May 2021, and allege that the additional expenses for interior damages will total less than $34,800.01. (Doc. 22, PageID.283.) But none of these facts appear in the Complaint. Even if they did, adding those two figures together would yield a total damages claim of up to $80,000, which exceeds the jurisdictional threshold, even before considering plaintiffs' claims for punitive damages and emotional distress / mental anguish damages. Plaintiffs also suggest that their punitive damages claims are unlikely to prevail given the unfavorable state of Alabama (Continued)

To date, however, no motion to amend the complaint has been filed; therefore, the original Complaint remains the operative pleading. What plaintiffs intend to allege in a pleading they might seek leave to file at some indeterminate point in the future is not relevant to the jurisdictional analysis. Besides, even if plaintiffs had filed an amended complaint purporting to limit their damages to an amount below the jurisdictional threshold, it is black-letter law that "[a] court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka*, 608 F.3d at 751 (citations omitted); *see also Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (same). Far from merely clarifying the amount in controversy at the time of removal, plaintiffs are attempting to effectuate a remand by altering the amount in controversy post-removal. That endeavor cannot succeed. *See generally Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp.2d 1279, 1282 (S.D. Ala. 2009) ("what is prohibited are post-removal changes in the amount in controversy, not post-removal clarifications of the amount that was in controversy at the moment of removal"); *Land Clearing Co. v. Navistar, Inc.*, 2012 WL 206171, *3 (S.D. Ala. Jan. 24, 2012) ("if a plaintiff comes forward after removal and clarifies (as opposed to altering) facts bearing on the amount in controversy, courts in this Circuit routinely accept such evidence in determining whether § 1332 jurisdiction existed at the moment of removal"); *Hartinger v. 21st Century Centennial Ins. Co.*, 2014 WL 12629756, *3 n.2 (M.D. Fla. Jan. 3, 2014) (collecting cases).

        **D.**    **Snap Removal / Allegedly Premature Removal.**

As a final basis for their Motion to Remand, plaintiffs argue that the Notice of Removal was premature and an improper "snap removal" because the resident defendant Brown had not been served yet. Plaintiffs' argument relates to the statutory provision forbidding removal "solely on the basis of the jurisdiction under 1332(a) of this title … if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). The controversial practice of "snap removal" is when a non-forum defendant that has been served with process removes the case to federal court before the forum defendant has been served with process, thereby circumventing the forum-defendant

---

law on the theories of liability that might support punitive damages. But plaintiffs' likelihood of recovery is not relevant to an amount-in-controversy analysis. Rather, "the pertinent question is what is <u>in controversy</u> in the case, not how much the plaintiffs are ultimately likely to recover." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019).

restriction on removal in diversity cases.  Nonetheless, plaintiffs' argument is misplaced.  This is not a "snap removal" situation.  On its face, § 1441(b)(2) applies only when a forum defendant has been "properly joined and served."  *See Goodwin v. Reynolds*, 757 F.3d 1216, 1220-21 (11th Cir. 2014) ("By its terms, the forum-defendant rule applies only if a forum defendant has been properly joined and served.") (internal quotation marks omitted).  This Court has already concluded that defendant Brown was fraudulently joined.  Because Brown was fraudulently joined, he cannot have been "properly joined" for purposes of § 1441(b)(2).  *See Encompass Ins. Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147, 153 (3rd Cir. 2018) ("Congress' inclusion of the phrase 'properly joined and served' addresses a specific problem – fraudulent joinder by a plaintiff.").  Thus, Brown's status as a citizen of Alabama is of no consequence, and the forum-defendant restriction set forth in § 1441(b)(2) is inapplicable.

**III.   Conclusion.**

For all of the foregoing reasons, plaintiffs' Motion to Remand (doc. 17) is **DENIED**.  The stay issued by this Court on July 20, 2021 (see doc. 16) as to briefing on the pending Motions to Dismiss is **LIFTED**.  As to both defendant State Farm's Motion to Dismiss Counts III and IV (doc. 6) and defendant Stewart's Motion to Dismiss with Prejudice (doc. 8), plaintiffs are **ORDERED** to file responses, supported by legal authority as appropriate, on or before **October 19, 2021**.  Movants will be allowed until **October 26, 2021**, to file their replies.  If the Court determines that oral argument is appropriate on either Motion, the parties will be notified and a hearing will be scheduled.  Otherwise, both Motions to Dismiss will be taken under submission after **October 26, 2021**.

DONE and ORDERED this 5th day of October, 2021.

s/ WILLIAM H. STEELE<br>UNITED STATES DISTRICT JUDGE